**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| KEVIN McLAUGHLIN,       )  | | |
|       Plaintiff,       ) | | |
|       ) | | |
| v.       ) | CAUSE NO.: 2:08-CV-58-PRC | |
|       ) | | |
| BERNARD FREEMAN, *et al.*,       ) | | |
|       Defendants.       ) | | |

**OPINION AND ORDER**

This matter is before the Court on:

(1) a Motion for Summary Judgment by Defendants Craig Ponton and John Zenone [DE 153], filed by Defendants Craig Ponton and John Zenone on October 22, 2012;

(2) a Motion to Strike Evidence Designated in Plaintiff's Response to Summary Judgment [DE 171], filed by Defendants Craig Ponton and John Zenone[1] on December 19, 2012;

(3) a Motion to Strike Evidence Designated in Both Plaintiff's Original Response and Amended Response to Summary Judgment [DE 197], filed by Defendant Ponton on May 10, 2013; and

(4) a Motion to Strike Plaintiff's Supplement to Amended Response to Summary Judgment and Plaintiff's Motion to Strike Plaintiff's Exhibit M and Replace with Exhibit M-1 [DE 204], filed by Defendant Ponton on May 23, 2013.

---

[1] Mr. Zenone was dismissed from this case by stipulation of the parties on February 26, 2013. Only Mr. Ponton remains as a defendant.

1

## PROCEDURAL BACKGROUND

On May 30, 2008, Plaintiff Kevin McLaughlin, proceeding *pro se*, filed a Complaint pursuant to 42 U.S.C. § 1983, alleging that a number of jail officials, including Defendant Craig Ponton (hereinafter referred to as the Defendant), violated his Fourteenth Amendment rights while he was a pretrial detainee at the Lake County Jail. Judge James Moody screened the Complaint pursuant to 28 U.S.C. § 1915A and allowed the suit to go forward.

On May 1, 2009, Defendant filed a motion for summary judgment, arguing that Plaintiff failed to utilize the Lake County Jail's grievance procedure before filing his § 1983 suit, which is required by 42 U.S.C. § 1997e(a). On March 16, 2010, Judge Moody denied the motion. On June 7, 2010, Judge Moody referred the matter to this Court for the purpose of conducting an evidentiary hearing on the issue of whether Plaintiff exhausted his administrative remedies.

On July 19, 2010, Plaintiff moved for the appointment of counsel, which the Court granted. Attorney Jeffrey Wrage agreed to a limited appointment, for representing Plaintiff at the evidentiary hearing only. On November 1, 2010, the Court conducted the evidentiary hearing and received witness testimony, exhibits, and argument. On November 5, 2010, the Court issued a recommended finding that Plaintiff had satisfied the exhaustion requirements of § 1997e(a). On March 14, 2011, Judge Moody issued an order adopting this Court's report and recommendation.

On February 11, 2011, Plaintiff again moved for the appointment of counsel, which this Court granted. On June 1, 2011, Attorney Carrie Castro agreed to represent Plaintiff. On August 15, 2011, Plaintiff moved to amend his Complaint, and on September 16, 2011, the Court granted the motion. On September 15, 2011, Plaintiff filed his Amended Complaint. On October 19, 2011, Defendant filed his Answer.

On October 22, 2012, Defendant filed the motion for summary judgment presently before this Court. On December 3, 2012, Plaintiff filed a response. On December 19, 2012, Defendant filed a motion to strike evidence designated in Plaintiff's response, and on December 20, 2012, filed a reply in support of summary judgment. On March 15, 2013, Plaintiff sought leave of the Court to file an amended response in opposition to summary judgment that included a new affidavit from Plaintiff. On March 18, 2013, the Court granted Plaintiff's motion. On March 28, 2013, Defendant filed a motion for an extension of time to file a reply to Plaintiff's amended response. The motion asserted that exhibits referenced in the Plaintiff's new affidavit were not submitted as an attachment and that Defendant would need time to review the exhibits once they were filed with the Court. On April 12, 2013, the Court granted Defendant's motion for additional time and ordered Plaintiff to file the referenced exhibits by April 26, 2013. Plaintiff did not file the exhibits by the deadline. On May 10, 2013, Defendant filed a second motion to strike, which, in addition to repeating the arguments in his first motion to strike, asked the Court to strike all references to the exhibits that Plaintiff did not file. Also on May 10, 2013, Defendant filed a reply in support of summary judgment. On May 11, 2013, Plaintiff filed the exhibits. On May 23, 2013, Defendant filed a third motion to strike. On June 3, 2013, Plaintiff filed a response to Defendant's third motion to strike. On June 11, 2013, Defendant filed a reply in support of his third motion to strike.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

**MOTIONS TO STRIKE**

Defendant has filed three motions to strike concerning various exhibits relied on by Plaintiff in opposing summary judgment. The Court will address each challenged exhibit.

### A. Exhibit A - Plaintiff's Verified Pro Se Complaint

*1. Paragraph 1, Page 3*

> Defendant challenges portions of the following:
>
> On 2/8/08 I Kevin McLaughlin experienced cruel and unusual punishment as a pre-trial detainee at Lake County Jail and I am holding this administration liable for violation of rights secured by the Constitution and laws of the United States. Bernard Freeman and Roy Dominguez, Craig Ponton, John Zenone are allowing policies and practices within this administration that shows no concern for humanity and staff members are deploying methods and tactics that show no concern for humanity.

Pl.'s Exhibit A, p. 3. Specifically, Defendant moves to strike the statement "On 2/8/08 I Kevin McLaughlin experienced cruel and unusual punishment" and the statement that Defendant and other Lake County Jail officials "are allowing policies and practices within this administration that shows no concern for humanity and staff members are deploying methods and tactics that show no concern for humanity." Defendant's motion is granted with respect to these statements on the basis that these statements are conclusions, not assertions of fact.

*2. Paragraphs 3, 4, 5, 6, and 7, Pages 4-5*

Defendant next moves to strike unspecified statements from paragraphs 3, 4, 5, 6 and 7 on pages 4 and 5 as inadmissible hearsay. The Court denies Defendant's request as he has not identified the statements that should be stricken and, moreover, the Court finds that many statements from these pages are admissible.

*3. Paragraph 9, Pages 5-6*

>Defendant challenges portions of the following:
>
>This administration has displayed a demeanor that has left me bewilder on how they infringe upon a persons rights like they set the standards. I informed Lt. G. Ratajczak that I was prepared to seek assistance from the Federal Government I showed her a letter, she replied "the Feds don't give a fuck about what I had to say." This is clearly deliberate indifference displayed by LT. G. Ratajczak to retaliate on me because I am aware of what they have been doing to me since I have been incarcerated here in Lake County Jail.

Pl.'s Exhibit A, pp. 5-6. Specifically, Defendant moves to strike the reference to "how [Defendants] infringe upon" people's rights, Officer Ratajczak's "deliberate indifference," and the statement attributed to Officer Ratajczak. The Court grants Defendant's motion with respect to the first two statements on the basis that these statements are conclusions, not assertions of fact. However, the Court declines to strike the statement attributed to Officer Ratajczak as it may be admissible for a purpose other than proving the truth of the matter asserted.

*4. Paragraph 10, Page 6*

>Defendant challenges portions of the following:
>
>In my past medical history I have documentation at St. Margrets Hospital that confirms I am allergic to Haldol, however I do not have access to those records and neither does Lake County Jail. I do have documentation from Lake County Jail (medical department) that clearly reveals I am allergic to Haldol, Thorazine and tomatoes and someone in the medical department wrote on this document ("allergy not reaction") in an effort to make it look like the drug does not cause me suffer from a reaction. (See attached Exhibit A-01) Also the day I was injected with Haldol (2/08/08) I was given benedryl to counter the allergic reaction.

Pl.'s Exhibit A, p. 6. Specifically, Defendant moves to strike the reference to "documentation at St. Margrets Hospital that confirms [Defendant is] allergic to Haldol" and the statement that "someone in the medical department wrote on this document ("allergy not reaction") in an effort to make it look like the drug does not cause me suffer from a reaction." The Court grants the motion with

5

respect to both statements. Plaintiff's assertion as to the contents of documents not presented to the Court is not admissible. Further, Plaintiff's speculation as to the motives of the person who wrote "allergy not reaction" is inadmissible.

*5. Paragraph 11, Page 6*

Defendant challenges portions of the following:

> This administration has addressed my medical issues in a very unprofessional manner and showed no regards for humanity. This cruel and unusual punishment left me humiliated and I am seeking Justice on all parties involved in this descreating ordeal, that took place in the confinements of the Lake County Jail.

Pl.'s Exhibit A, p. 6. Specifically, Defendant moves to strike the statement that "This administration has addressed my medical issues in a very unprofessional manner and showed no regards for humanity" and the statement characterizing Plaintiff's treatment as "cruel and unusual punishment." The Court grants Defendant's motion with respect to both statements on the basis that they are conclusions, not assertions of fact.

*6. Paragraph 12, Pages 6-7*

Defendant moves to strike the following in its entirety:

> I spoke with an (UMHP em/f) about my medical issues and I was provided some clothing to put on. I was informed by an (UMHP em/f) Dr. Roberts about an allegation of me committing a suicide attempt, which was a false allegation to cover up the cruel and unusual punishment that I endured.

Pl.'s Exhibit A, pp. 6-7. The Court grants Defendant's motion with respect to the reference to cruel and unusual punishment that Plaintiff allegedly endured on the basis that it is a conclusion, not an assertion of fact and the statement made to Plaintiff by Dr. Roberts on the basis that it is hearsay.

**B. Exhibit C - Plaintiff's October 28, 2009 Affidavit**

*1. Paragraph 2, Page 3*

> Defendant moves to strike the following in its entirety:
>
> In this complaint, I have two major issues that came out of the deliberate indifference and cruel and unusual punishment by the Lake County Jail staff.  They are: 1) Administration on more than 30 different occasions of injections of Haldol (a anti-psychotic drug) that I am allergic to (this was documented in my jail medical file) and 2) Cruel and unusual punishment and deliberate indifference by this staff, in particular, on February 8, 2008.

Pl.'s Exhibit C, p. 3.  The Court grants Defendant's motion with respect to the reference to the deliberate indifference and cruel and unusual punishment of the Lake County Jail employees on the basis that it includes conclusions, not assertions of fact. However, the Court declines to strike the reference to Plaintiff being injected with Haldol on more than 30 different occasions.  Plaintiff is free to testify as to facts within his personal knowledge and relevant to the question of whether Defendant has violated his federally protected rights.

*2. Paragraph 4, Page 3*

> Defendant next challenges portions of the following:
>
> I know that I have some mental problems and I can get very stressed, but it doesn't seem right that they can give me this drug as punishment for my behavior. The officers seemed to enjoy watching me go through this extreme allergic reaction as a payback for my behavior.

Pl.'s Exhibit C, p. 3.  Specifically, Defendant moves to strike the reference to Haldol being administered to him as a punishment and the reference to the officers appearing to enjoy watching him suffer through an allergic reaction as retribution for Plaintiff's behavior on the basis that these are conclusions, not assertions of fact.  The Court denies Defendant's request to strike the reference to Haldol being administered as punishment.  As to the second challenged statement, the Court

strikes the reference to "payback," but declines to strike Plaintiff's statement that the officers appeared to enjoy watching him suffer because this is drawn from his personal knowledge of witnessing the appearance of the officers.

### C. Exhibit F - Department of Justice Letter

Defendant also moves to strike Plaintiff's Exhibit F in its entirety. Exhibit F is a letter from the U.S. Department of Justice Civil Rights Division concerning its investigation of conditions at the Lake County Jail pursuant to the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997. Federal Rule of Evidence 803(8) provides that the rule against hearsay does not exclude public reports that contain "factual findings from a legally authorized investigation" and are trustworthy. The Court finds that Exhibit F falls within this exception. Further, although the investigation underlying the report occurred months after the incident giving rise to this suit, the Court finds that it is possible that some of the information in the report could be relevant to Plaintiff's official capacity claims against Defendant. *See Martinez v. Cook County*, No. 11-C-1794, 2012 WL 6186601, at *4 n.7 (N.D. Ill. Dec. 12, 2012) (collecting cases that have admitted similar DOJ reports at trial under Federal Rule of Evidence 803(8)).

### D. Exhibit G - Plaintiff's February 19, 2013 Affidavit

As noted above, Plaintiff's amended response to Defendant's motion for summary judgment included a new affidavit provided by Plaintiff. The affidavit includes references to "Exhibits A-M," which Plaintiff stated are copies of letters that he sent to a defendant not involved in this motion. After Defendant argued that he needed access to these exhibits before filing his reply in support of summary judgment, the Court ordered Plaintiff to file Exhibits A-M by April 26, 2013. Plaintiff did not file the exhibits until May 11, 2013. Defendant moves to strike the exhibits as well as any

reference to the exhibits in the affidavit on the ground that Plaintiff failed to comply with the Court's scheduling order. The Court declines to do so. A review of the record in this matter reveals that Defendant introduced Exhibits A-M into evidence at the November 1, 2010 evidentiary hearing and questioned Plaintiff about them. Thus, the exhibits were already a part of the record in this case and Defendant had knowledge of their contents. As a result, the Court denies Defendant's motion with respect to Exhibit G.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R.

Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-111 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with

10

'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

## MATERIAL FACTS

Plaintiff Kevin McLaughlin was booked into the Lake County Jail as a pretrial detainee on December 29, 2005. On January 19, 2006, Plaintiff was transferred to the GEO Correctional Facility in New Castle, Indiana for temporary placement due to repeated suicide attempts. On February 26, 2006, Plaintiff was transferred back to the Lake County Jail. Plaintiff remained at the Lake County Jail until August 28, 2008, at which point he was transferred into the custody of the Indiana Department of Correction. Defendant Craig Ponton was a Deputy Warden at the Lake County Jail while Plaintiff was confined there.

Plaintiff has admitted to having mental problems. He states that his normal medication routine includes Seroquel (50 mg twice a day) and Trazadone (50 mg once a day). Seroquel is an antipsychotic and Trazadone is an antidepressant. Plaintiff is allergic to another antipsychotic medication called Haldol. When injected with Haldol, Plaintiff suffers from hives, panic, swelling of the throat, difficulty breathing, and dehydration.

During his time at the Lake County Jail, Plaintiff was injected with Haldol against his will more than 30 times, including on February 8, 2008. On that date, Plaintiff was in his cell when a corrections officer approached his cell and threatened him with violence. The officer left, but returned with a number of other officers. The officers removed Plaintiff from his cell, and one officer instructed a nurse to inject Plaintiff with Haldol. After the nurse administered the injection, Plaintiff was held against a wall while one of the officers threatened to take his clothes away. A few moments later, one of the officers asked Plaintiff if he said he was going to kill himself. Although Plaintiff denied having made such a statement, a member of the medical staff was called. The medical worker informed Plaintiff that he would have to be placed under suicide watch. Plaintiff was then moved into a room and ordered to remove all of his clothes. After Plaintiff removed his clothes, he was placed in restraints and ushered down a hallway in front of other inmates and female staff officers. As Plaintiff walked down the hallway, people taunted him and made derogatory remarks about his genital area. The officers brought Plaintiff into a room where he was strapped to a concrete slab with leather belts at each wrist and ankle. Initially, Plaintiff was not provided a mattress or blanket. Eventually, he was given a thin sheet, but it was blown off by the room's ventilation system.

At this point, Plaintiff's allergic reaction to the Haldol had become more severe. Plaintiff suffered pain, disorientation, and swelling of his throat. A nurse and a corrections officer brought Plaintiff water periodically. A couple of hours after Plaintiff was strapped to the concrete slab, a nurse entered the room and informed Plaintiff that she would release him from his restraints if he agreed to drink a liquid that would cause him to vomit. Plaintiff agreed and was released from the

restraints. Plaintiff remained in the room until February 11, 2008. During his stay in the room, Plaintiff was not given a mattress or clothes.

At no point during Plaintiff's incarceration at the Lake County Jail—from December 19, 2005 though August 28, 2008—did he file a written grievance with the Deputy Warden or an appeal of any grievance filed with the Deputy Warden.

## ANALYSIS

Plaintiff Kevin McLaughlin brought this § 1983 action against Defendant Deputy Warden Craig Ponton, in his individual and official capacities, alleging that Defendant violated his rights under the Fourteenth Amendment. The Court will address each claim in turn.

### A. Individual Capacity

Plaintiff's individual capacity claim against Defendant attempts to hold Defendant liable for the following allegedly unconstitutional acts: (1) officials at the Lake County Jail repeatedly injecting Plaintiff with Haldol despite knowing that Plaintiff is allergic to the drug, (2) officials at the Lake County Jail using excessive force against Plaintiff on February 8, 2013, and (3) Plaintiff being denied clothing and a mattress from February 8, 2013, to February 11, 2013. Plaintiff does not allege—and Defendant denies—that Defendant Ponton directly participated in any of these allegedly unconstitutional acts. Instead, Plaintiff alleges that Defendant had actual knowledge of the acts and failed to take any action to prevent or address them. "The doctrine of respondeat superior can not be used to hold a supervisor liable for conduct of a subordinate that violates a plaintiff's constitutional rights." *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001). "[A] supervising prison official cannot incur § 1983 liability unless that officer is shown to be personally responsible for a deprivation of a constitutional right." *Vance v. Peters*, 97 F.3d 987, 992

(7th Cir. 1996). A supervising prison official may be found personally responsible for another's conduct only

> if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent. That is, he must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye . . . . In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery.

*Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (citations and internal quotation marks omitted). Thus, in order for Plaintiff's individual capacity claim to survive summary judgment, he must point to facts that suggest he has suffered a constitutional deprivation and that suggest Defendant knew of the conduct causing the deprivation and turned a blind eye to it. For the reasons set forth below, the Court finds that Plaintiff has satisfied this requirement.

"The Eighth Amendment, which prohibits cruel and unusual punishment, only applies to convicted prisoners, but . . . pretrial detainees are entitled, under the Fourteenth Amendment's due process clause, to the same basic protection." *Thomas v. Cook Cnty. Sheriff's Dept.*, 604 F.3d 293, 301 n.2 (7th Cir. 2009). Thus, as a pretrial detainee, Plaintiff's claim is governed by Eighth Amendment legal standards. Under the Eighth Amendment, "the plaintiff has the burden of showing that (1) the harm to the plaintiff was objectively serious; and (2) that the official was deliberately indifferent to her health." *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2003). Here, Plaintiff has made a showing sufficient to raise a triable issue as to both elements. With respect to the first element, Plaintiff testified that he suffers from hives, panic, swelling of the throat, difficulty breathing, and dehydration when injected with Haldol. With respect to the second prong, Plaintiff testified that medical staff members always follow a Haldol injection with medication intended to counteract the allergic reaction, suggesting that the officials know that Plaintiff is allergic to Haldol

but administer it despite this fact. Thus, Plaintiff has sufficiently shown the deprivation of his Fourteenth Amendment rights.

Plaintiff has also produced sufficient evidence showing that Defendant Ponton could be found personally responsible for Plaintiff's constitutional deprivation. Plaintiff's Affidavit of February 19, 2013, states:

> I received a visit from Lake County Jail Deputy Warden Craig Ponton who came up to my cell door to discuss [a January 10, 2008] incident. I told him about the forced injection of Haldol that I was allergic to, telling him that they were forcing me, as it was against my will. However, nothing was done about it.

Pl.'s Am. Resp., Ex. G, p. 1. As stated above, at this summary judgment stage a court must construe all the fats in a light most favorable to the non-moving party (Plaintiff McLaughlin) and draw all legitimate inferences in favor of him. While Plaintiff was unable to specify the date that Defendant visited him at his cell, the Court finds that this evidence could lead a jury to conclude that Defendant knew about the Haldol injections and turned a blind eye to the practice. Accordingly, the Court finds that Plaintiff has shown sufficient evidence to survive summary judgment on his individual capacity claim, and the Court denies Defendant's motion with as to this claim.

### B. Official Capacity

Plaintiff also asserts an official capacity claim against Defendant Ponton. However, because "[a]n official capacity suit is tantamount to a claim against the government entity itself," *Guzman v. Sheahan*, 495 F.3d 852, 859 (7th Cir. 2007), the claim is treated as a claim against the Lake County Sheriff's Department itself, *see Burton v. Lacy*, No. 1:07-cv-918, 2008 WL 187552, at *5 (S.D. Ind. Jan. 18, 2008) (ruling that under Indiana law suits brought against officials of a sheriff's department are suits against the sheriff's department itself). "Government entities cannot be held liable for the unconstitutional acts of its employees unless those acts were carried out pursuant to

15

an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008); *see also Phelan v. Cook County*, 463 F.3d 773, 789 (7th Cir. 2006) ("Municipal entities cannot be held vicariously liable for the acts of their employees under Section 1983 on a respondeat superior theory."). This requirement is used "to distinguish acts of the municipality from acts of employees of the municipality, and thereby makes clear that municipal liability is limited to action for which the municipality is actually responsible." *Id.* (citation and internal quotation marks omitted). A plaintiff may satisfy the official policy requirement by demonstrating the existence of:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority.

*Brokaw v. Mercer County*, 235 F.3d 1000, 1013 (7th Cir. 2000). Thus, to survive summary judgment, Plaintiff must demonstrate that an official policy of the Lake County Sheriff's Department caused him to suffer a deprivation of his civil rights.

The Court will address Plaintiff's official capacity claims in two parts: the February 8, 2008 incident and the Haldol injections. With respect to the February 8th incident, Plaintiff has not provided the Court with any evidence suggesting that an official policy caused his alleged constitutional deprivations. Plaintiff asserts that on that date he was forcefully removed from his cell, forced to strip naked and walk in front of inmates and female guards, strapped to a concrete slab for a few hours, and left naked without a mattress for four days. Whether or not these acts constituted violations of Plaintiff's civil rights, Plaintiff has not pointed to a single piece of evidence suggesting that they were the product of an express policy, a widespread practice, or a person with final policymaking authority. To the extent Plaintiff's official capacity claims rested on these

occurrences, Defendant's motion for summary judgment is granted. *See Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1071 (7th Cir. 2012) ("Even if Holloway could show that he suffered a constitutional deprivation, the Sheriff would still be entitled to summary judgment because Holloway did not present evidence to establish that the alleged deprivation was a result of an existing policy, rather than an isolated incident.").

With respect to the Haldol injections, the Court understands Plaintiff to argue—Plaintiff does not explicitly state the official policy being challenged—that the Lake County Sheriff's Department had a widespread practice of administering medication to inmates against their will as a form of discipline and knowing that it would cause pain and suffering. A widespread practice is generally established by pointing to a large number of harmful acts and "inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned, thus in either event adopting, the misconduct of subordinate officers." *Jackson v. Marion County*, 66 F.3d 151, 152 (7th Cir. 1995). The Seventh Circuit has stated that

> the word "widespread" must be taken seriously. It is not enough to demonstrate that policymakers could, or even should, have been aware of the unlawful activity because it occurred more than once. The plaintiff must introduce evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision.

*Phelan*, 463 at 790. Here, Plaintiff points to two pieces of evidence in support of his argument that the Lake County Jail had an official policy of administering medication to inmates in an unconstitutional manner. First, Plaintiff has testified that Lake County Jail officials injected him with Haldol against his will more than 30 times despite the fact that they know he is allergic to Haldol and will suffer as a result. Further, Plaintiff asserts that each time he is injected with Haldol,

17

a member of the medical staff will follow up the injection with medications counteracting Plaintiff's allergic reaction, thereby suggesting that Plaintiff's allergy is known to members of the medical staff. The second piece of evidence referred to by Plaintiff is a report produced by the Civil Rights Division of the U.S. Department of Justice concerning the conditions at the Lake County Jail during a December 2008 investigation. However, Plaintiff failed to cite any facts from the DOJ report that support his widespread practice argument. The one fact to which Plaintiff specifically refers to in the DOJ report is "that inmate H.H. was administered 1300 mg of Haldol at a single time, which is a potentially lethal amount." Pl.'s Am. Resp., p. 11. However, as Defendant points out, this is a misleading interpretation of the report. The DOJ report actually stated:

> Inmate H.H. reported that LCJ gives him five different psychotropic medications, to self-administer throughout the day. LCJ has given him as much as 1300 mgs of Haldol at a single time, a potentially lethal amount if ingested all at once.

Pl.'s Resp., Ex. F, p. 8. This is not an example of the Lake County Jail forcing medication upon an inmate against his will as discipline or with knowledge that the medication will harm the inmate. Outside of this citation, Plaintiff points to no other fact in the report documenting an instance of Lake County Jail officials administering medication in the manner suggested by Plaintiff.

Because Plaintiff's references to the DOJ report produced no supporting evidence, his widespread practice claim rests solely on his own experiences with the Haldol injections. The Seventh Circuit has stated that a plaintiff should not be "foreclosed from pursuing Section 1983 claims where she can demonstrate that repeated actions directed at her truly evince the existence of a policy." *Phelan,* 463 F.3d 773, 789-90. "However, it is necessarily more difficult for a plaintiff to demonstrate an official policy or custom based only on his own experience because what is needed is evidence that there is a true municipal policy at issue." *Grieveson*, 538 F.3d at 774. As

was noted above, "[t]he plaintiff must introduce evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the part of the policymakers was apparent and amounted to a policy decision." *Phelan,* 463 F.3d at 790; *see also Grieveson,* 538 F.3d at 774 (stating that the "pivotal requirement" of an official capacity claim is that a plaintiff must demonstrate that the accused government entity has made a policy choice). Here, the Court finds that while Plaintiff may have suffered a number of civil rights violations by being repeatedly injected with Haldol, there is insufficient evidence to infer that the policymakers at the Lake County Jail were likely to have known about them. Accordingly, the Court finds that Plaintiff has failed to demonstrate the existence of an official policy and grants Defendant's motion for summary judgment on Plaintiff's official capacity claim.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS in part** and **DENIES in part** the Motion for Summary Judgment by Defendants Craig Ponton and John Zenone [DE 153]. The Court **GRANTS** the motion with respect to Plaintiff's official capacity claim. The Court **DENIES** the motion with respect to Plaintiff's individual capacity claim. The Court **GRANTS in part** and **DENIES in part** the Motion to Strike Evidence Designated in Plaintiff's Response to Summary Judgment [DE 171], the Motion to Strike Evidence Designated in Both Plaintiff's Original Response and Amended Response to Summary Judgment [DE 197], and the Motion to Strike Plaintiff's

Supplement to Amended Response to Summary Judgment and Plaintiff's Motion to Strike Plaintiff's Exhibit M and Replace with Exhibit M-1 [DE 204].

By separate order, the Court will set this matter for a telephonic scheduling conference to set a trial date.

SO ORDERED this 26th day of September, 2013.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:   All counsel of record